**AETNA INSURANCE COMPANY, Plaintiff-Appellant, v RAILWAY EXPRESS AGENCY, INC., ET., Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6732.   Decided February 24th, 1947.

Dolle, O'Donnell & Cash, Cincinnati, for plaintiff-appellant.

Graydon, Head & Ritchey, Cincinnati, for defendants-appellees.

## OPINION

By ROSS, J.

Appeal on questions of law from a judgment of the Common Pleas Court of Hamilton county, in favor of the plaintiff for an amount limited by the provisions of an express receipt.

The plaintiff claims the limitation in such receipt is inapplicable in favor of the defendant railroads and that the trial court should have rendered judgment for the full amount of the loss suffered by the plaintiff's assured.

The merchandise which was destroyed was consigned to the plaintiff's assured via Railway Express Agency, a duly accredited agent for the two railroad defendants.

The case was submitted to the trial court upon the pleadings and agreed statement of facts.

The plaintiff, an Insurance Company, paid to the Wright Aeronautical Corporation the full amount of the loss to a shipment sustained when such shipment of aeroplane parts was damaged through the admitted negligence of the New York Central Railroad Company in the operation of one of its trains. The plaintiff became subrogated to the claim of the assured against the Railroad Company by virtue of an assignment.

The shipment was placed in a baggage car of the New York Central Railroad Company by employees of the Express Agency, and was thereafter at all times in the continuous physical custody of Railway Express employees. The train, including the baggage car was operated over the tracks of the C. C. C. & St. L. Ry. Co., and this was the only connection of that railway with the facts herein involved.

The railroads are required by law to furnish express facilities for the benefit and use of the public.

The defendant railroad, with other railroads, acquired property owned by the American Railway Express Company, formed the Railway Express Agency, and designated such agency as the agent of such railroads to perform their duties incident to carriage of express shipments. The Agency filed with the Interstate Commerce Commission tariffs, showing rates and charges for the carriage of goods by express:

In unloading the shipment from the baggage car, it became necessary to put same upon a hand truck, placed on the tracks of the C. C. C. & St. L. Ry. and while such truck, upon which a part of such shipment was placed, was so located, it was negligently struck by a train operated by the New York Central Railroad Company, and the portion of the express shipment so unloaded thereon was damaged.

The reasonable value of the property so damaged amounted to $7,091.81.

Under the terms of the Uniform Express receipts, the limit of liability of the Railway Express Agency and all carriers handling the shipment for any loss and damage to the shipment involved, was $1322.00.

The plaintiff as assignee of the claims of the consignee, claims the full amount of the loss from the Railroads, upon the theory that the limitation applying to the agency is inapplicable to excuse the railroads from liability due to the negligence of the New York Central Railroad Company.

The extent of liability depends upon the language of the express receipt, which contained the following:

"1. The provisions of this receipt shall inure to the benefit of and be binding upon the consignor, the consignee, and all carriers handling this shipment and shall apply to any reconsignment, or return thereof.

"2. In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of 100 pounds or less and not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less, or for more than fifty cents per pound, actual weight, for any shipment weighing more than 100 pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed such value."

The claim of the plaintiff is that the railroads did not **handle** the shipment and, hence, cannot avail themselves of the limitation of liability, although as to the Express Agency the provision is admittedly a valid limitation of liability.

In so contending the plaintiff limits the meaning of the word "handling" to its narrowest sense, to-wit: to actual physical contact with the shipment itself. It is the contention of plaintiff that in order to apply the limitation to the railroads their employees must have had physical contact with the various items of the shipment in loading, transportation, or unloading, and that the mere operation of the train in which

the baggage car was located is insufficient to justify the claim of the railroads that they handled the shipment.

The effect of this construction of the express receipt, maintained by the plaintiff, is to limit the operation of the limitation contained in such receipt to the *agent* of the railroads.

If such railroads, in carrying out the duty imposed upon them by law to carry express shipments, had not employed a joint agency, and a contract of limitation had been agreed to directly by the railroads and the shipper, there could be no question that such limitation would have applied.

Is such limitation less forceful in favor of the railroads because executed through this joint agency? There seems no logical reason to so conclude.

The employees of the railroad agency were actually physically handling the shipment when employees of the railroad negligently operating other facilities of the railroad caused damage to such shipment. Obviously, the contract of limitation was not entered into by the Express Agency merely to limit its liability as an agent of the railroads, but in order that the liability of its principals should also be limited.

If the Express Agency is an entirely separate entity and not (as it is) a joint agent of the railroads, then the railroads are not carrying out the duty imposed upon them by law to carry express shipments.

The railroads share in the profits and losses of the express agency. If a lower rate is accepted by their agency for a shipment by reason of the limitation of liability, then the railroads receive a smaller return for the services rendered through their agency and their own employees in hauling the cars that contain the shipment, which reached its destination through the joint efforts of persons directly employed by the railroads and indirectly employed by the railroads through their agency.

Article II of the contract between the railroads and the agency provides in part:

"Sec. 1. The Rail Company hereby constitutes and appoints the Express Company its exclusive agent (a) for the conduct and transaction of the express transportation business, including the off line auxiliary service (commonly known and referred to as pick-up and deliver), upon such passenger, express or mail trains of the Rail Company as may be agreed to, over the main lines, branches and extensions of all railroads now or hereafter, during the continuance of this agreement, owned or leased, and operated by the Rail Company, * * * ."

It seems clear, therefore, that the "handling" of the shipment by the employees of the agency was a "handling" by the railroads, through the employees of their duly constituted agent, and that the contract executed by the agency would bind the railroads, the shipper, and consignee.

However, even if it be claimed the contract applied only to those employees of the agency "handling" the shipment, the position of the plaintiff cannot be sustained.

Both shipper and consignee knew that a shipment by express requires that the car into which the shipment is placed must be transported from the point of shipment to the point of delivery over the rails of some railroad, that the car in which the shipment is placed will become part of a train which will be drawn by a locomotive over the rails of a railroad, and that engineers, firemen, conductors, brakemen, switchmen, telegraph operators, and many other employees of the railroad will cooperate with the baggage and express men in seeing that such shipment arrives at its destination. To say that only the few employees who are actually physically in direct contact with the packages or items of the shipment **handle** it is to place a strained construction upon the word "handling" so narrow in meaning that it cannot be reasonably supposed the parties to the agreement intended such construction.

Of course, the word "handling" has been construed to have different connotations, varying with the environment in which it is framed. See: Words and Phrases, Vol. 19, Permanent Edition, p. 52, et seq. See, also: Sesnon v U. S., 182 Fed. 573, 577.

The "Shorter Oxford English Dictionary" defines Handling "The action of Handle v — (2) Treatment — Management."

Under the word "Handle" (3) To manage, direct, conduct, control.

Webster's New International Dictionary (1945) defines the word as "(1) A touching, controlling, managing, using, dealing with, etc., with the hand or hands, or as with hands."

The word "Handle" is defined "(5) To manage, control, direct, as he handled his regiment finely."

It is a matter of common knowledge that the use of this word as applied to freight or express shipments implies the control, direction, and movement of such freight or express shipment from point of receipt to point of destination. Such is the commonly accepted meaning of the term and it is inconceivable that any person familiar with such shipments

would limit the meaning of the word to actual physical contact with the shipment.

For these reasons, the judgment of the Court of Common Pleas is affirmed.

MATTHEWS, PJ, ROSS and HILDEBRANDT, JJ, concur in Syllabus, Opinion and Judgment.