NORTHERN FUR COMPANY, Inc. and Insurance Company of North America, Plaintiffs-Appellants,

v.

MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY and Railway Express Agency, Inc., Defendants-Appellees.

No. 11398.

United States Court of Appeals Seventh Circuit.

June 29, 1955.

John M. Aherne, New York City, Clarence R. Conklin, Chicago, Ill., John L. Conners, New York City, Heineke & Conklin, Chicago, Ill., Bigham, Englar, Jones & Houston, New York City, of counsel, for plaintiffs-appellants.

Fulmer Long, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

From a judgment of the district court for $2,000 in favor of plaintiffs and against both defendants, plaintiffs appeal on the ground that the judgment against the defendant railway company (hereinafter referred to as "Soo") should not have been limited to $2,000, but should have been for $10,444.50.

The facts are undisputed.

On November 23, 1947, at Karlstad, Minnesota, plaintiff Northern Fur Company, Inc. (hereinafter referred to as "plaintiff") delivered two bundles of furs, having an actual value of $10,444.-50, to Railway Express Agency (hereinafter sometimes referred to as "Railway Express"), for carriage to itself in New York City, and Railway Express issued its express receipt for *rail* transportation to Minneapolis, thence by *air* express to New York. In that receipt plaintiff caused a value of $2,000 to be declared on the furs.

The shipment, which weighed 105 pounds, was lost as a result of the negligent collision of two Soo trains on November 24, 1947 near Vergas, Minnesota, upon one of which trains the shipment was being carried in space allotted to Railway Express by Soo for express shipments, in a railroad car owned by Soo and jointly used for the transportation of passengers, baggage and express. The express car, in addition to the railroad's name, bore the lettering "Railway Express Agency, Inc." At the time of the loss the shipment was in charge of two men traveling in said car. They were primarily employed by Soo, but acted as express messengers having exclusive charge of the shipment. Railway Express reimbursed Soo for one-half of their salaries.

A uniform express receipt was issued by Railway Express. It calls for combined rail express and air express transportation, and it contains clause 1, which reads:

"1. The provisions of this receipt shall inure to the benefit of and be binding upon the consignor, the consignee and all carriers handling this shipment and shall apply to any reconsignment or return thereof."

Clause 2 of the express receipt reads as follows:

"2. In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of 100 pounds or less and not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less, or for more than fifty cents per pound, actual weight, for any shipment weighing more than 100 pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed such value."

The controversy here is between the plaintiffs and Soo. Plaintiffs contend that Soo is liable for the full value of $10,444.50. Soo admits that it is liable for loss caused by its negligence, but contends it is liable for only the declared value, because *inter alia* clause 2 of the uniform express receipt, heretofore quoted, limits the shipper's recovery against Railway Express to $2,000, Soo is a "carrier handling the shipment" within the meaning of clause 1 aforesaid, and hence its liability is similarly limited.

With respect to this defense, plaintiffs say that clause 1 of the receipt was not intended to apply to Soo. This, they say, is because Soo was not a carrier; but, if a carrier, it was not handling the shipment and, if a carrier handling the shipment, clause 2 of the receipt as to Soo is invalid because not embodied in a tariff filed with the Interstate Commerce Commission.

When the government took over the operation of the railroads in 1918, the director general refused to make contracts with the separate companies for the operation of express business over the railroads subject to his control. As a consequence, on June 22, 1918, American Railway Express Company was incorporated to act as the agent of the director general of railroads in transporting express shipments. U. S. v. American Railway Express Co., 265 U.S. 425, 428, 44 S. Ct. 560, 68 L.Ed. 1087. The Transportation act of 1920 empowered the Interstate Commerce Commission to authorize the consolidation of the four express companies (which at that time remained in existence, although not operating) into one express company, and on December 7, 1920, the permanent organization of the American Railway Express Company was approved. Consolidation of Express Companies, 59 I.C.C. 459.

American Railway Express Company continued to carry on the express business under individual contracts with the railroad companies until, in 1928, the railroads agreed upon a Plan for the Future Conduct of Express Business and organized the defendant, Railway Express Agency, Inc., which purchased the property of American Railway Express Company used in the conduct of express operations. Since 1938 (when the sole remaining independent express company was dissolved), Railway Express has conducted virtually all the rail express business in the United States. Each of the rail carriers, including Soo, entered into an agreement with Railway Express, standard in form and known as "Express Operations Agreement".

Pursuant to Article II of the Express Operations Agreement, Railway Express was constituted the exclusive agent of the railroads for the conduct and transaction of the express transportation business over the lines of the rail carriers.

The provisions of the Express Operations Agreement for the pooling of railroad services and the division among the railroads of express revenues, and the exclusive agency provisions of the same agreement were approved by the Interstate Commerce Commission. Securities and Acquisition of Control of Railway Express Agency, Incorporated, 150 I.C.C. 423; Railway Express Agency, Incorporated, and Certain Railroad Carriers' Application for Authority to Contract for Pooling and Division of Earnings, 227 I. C.C. 517; Express Contract, 1929, 275 I. C.C. 739; United States v. Railway Express Agency, D.C., 101 F.Supp. 1008.

The Express Operations Agreement was in effect at all times material in this litigation.[1]

Railway Express is a corporation organized under the laws of Delaware. It operates throughout the forty-eight states and in Alaska, Hawaii, Canada and Cuba. It is authorized by its certificate of incorporation to engage in the express transportation business "as agent or otherwise". It is controlled by its own officers and directors. It is a common carrier by express—rail, air and truck—and also operates as a motor carrier under part 2 of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq.

In its brief Soo says:

"A railroad never has had to file tariffs covering the transportation of express over its lines pursuant to a contract with an independent express company, whereas a railroad operating its own express business in its own name or through a bureau or division of its own entity, has been required since 1887, when the Interstate Commerce Act became effective, to file tariffs covering express transported over its lines. See Railway Express Agency, Inc., Determination of Status, 21 M.C.C. 161,

---

1. Section 1 of article XI of the agreement provided:

"The Express Company may arrange with the Rail Company for station and train employees of the Rail Company to act as agents and express messengers of the Express Company and to handle express at railroad stations, subject to the rules of the Express Company, * * *."

164, 180, 181, 182. Independent express companies were named as carriers in the Hepburn Amendment to the Interstate Commerce Act effective in 1906 [11 U.S.C.A. § 1 et seq.] and thereafter such companies were required to file tariffs covering shipments handled in their service over lines of railroads."

Plaintiffs in reply say, in part:

"As a justification for Soo's failure to file tariffs and obtain a released rate order, defendants urge that no railroad ever had to file tariffs, etc. for the transportation of express matter tendered by an independent express company, although a railroad operating its own express business was required to do so. We accept that statement, and we adopt it as our own. The reason railroads were not required to file such tariffs is because *they were not common carriers* with respect to the independent express companies (The Express Cases, 117 U.S. 1, 21 [6 S.Ct. 542, 29 L.Ed. 791]; Bank of Ky. v. Adams Express Co., 93 U.S. 174, 184 [23 L.Ed. 872])."

These respective assertions indicate that the parties agree that where a shipper deals with an express company, rather than with the railroad upon whose lines the express company operates, according to historical practice[2] the railroad over whose line the express company operates has never filed tariffs with the Interstate Commerce Commission as common carriers have traditionally done. It would seem to follow logically that the substitution of Railway Express for the numerous independent express companies existing prior to 1918 has not changed the character of the railroad or its duty in regard to filing tariffs. If universal practice during the time that there were several independent express companies did not require the filing of tariffs by the railroads, we see no reason why the substitution of one express company for several would create such a requirement.

◼ We do not concur with plaintiffs in their statement following the above quoted comment from their reply brief:

"That is our primary position, taken in Point I of our main brief, viz., that Soo is not a 'carrier' at all, with respect to express shipments."

It is a *non sequitur*. A railroad is a carrier even though it be not a common carrier.

◼ Thus, in Kansas City Southern Railway Co. v. United States, 282 U.S. 760, at page 764, 51 S.Ct. 304, at page 306, 75 L.Ed. 684, the court said:

"There is no doubt that common carriers, subject to the Interstate Commerce Act, may have activities which lie outside the performance of their duties as common carriers and are not subject to the provisions of the Act. Santa Fe, Prescott and P. Ry. Co. v. Grant Brothers Constr. Co., 228 U.S. 177, 188, 33 S.Ct. 474, 57 L.Ed. 787; Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 60 L.Ed. 984."

Compare Globe & Rutgers Fire Ins. Co. v. Winter Garden Co., 2 Cir., 9 F.2d 227, where it was recognized that, when a group of passengers retained custody of their baggage placed by them in cars furnished by the railroad especially for them, the railroad was not a common car-

2. In Memphis & Little Rock R. R. Co. v. Southern Express Co., 117 U.S. 1, 6 S.Ct. 542, 552, 29 L.Ed. 791, at page 800, commonly known as "The Express Cases", the court said:

"But it is neither averred in the bills, nor shown by the testimony, that any railroad company in the United States has ever held itself out as a common carrier of express companies; that is to say, as a common carrier of common carriers.

On the contrary, it has been shown, and in fact it was conceded upon the argument, that down to the time of bringing these suits no railroad company had taken an express company on its road for business except under some special contract, verbal or written, and generally written, in which the rights and the duties of the respective parties were carefully fixed and defined."

rier in respect to the baggage. The court, at page 229, said:

"The railroad had nothing to do with transport, except to haul the cars. In legal effect those entitled to travel on Garden Company's passage tickets took their baggage with them, in what for the time being were their own cars; they never handed over the insured property to the care or custody of the Railroad Company. Consequently the Railroad Company was liable for negligence alone; * * *".

In the case at bar Soo admits that it is liable for its negligence, but insists that the extent of a recovery therefor by plaintiffs is limited by the $2,000 value limitation placed in the contract between Railway Express and plaintiff. As a carrier not having custody of the articles shipped, it had a right to the benefit of the limitation fixed in the latter contract. As to such shipment it was not a common carrier and hence it was not required to file tariffs covering this transaction. It appears that Railway Express' tariffs conform to the orders of the Interstate Commerce Commission issued after hearings in which the railroads were parties in interest. The public is adequately protected by the filing of tariffs in the name of Railway Express.

The uniform express receipt was approved by the Interstate Commerce Commission in 1913. Matter of Express Rates, Practices, Accounts and Revenues, 28 I.C.C. 131. Clauses 1 and 2 thereof have remained substantially the same since that date.

■ A railroad which, under the circumstances of this case, is transporting a car in which an express shipment is in the physical custody of employees of an express company, is not only a carrier, but it is a "carrier handling" said shipment, as defined in clause 1 of the receipt.

In holding that Soo handled the shipment in question our reasoning is similar to that of the court in Aetna Ins. Co. v. Railway Express Agency, 80 Ohio App. 30, 74 N.E.2d 425, at page 427, where that court said:

"Both shipper and consignee knew that a shipment by express requires that the car into which the shipment is placed must be transported from the point of shipment to the point of delivery over the rails of some railroad, that the car in which the shipment is placed will become part of a train which will be drawn by a locomotive over the rails of a railroad, and that engineers, firemen, conductors, brakemen, switchmen, telegraph operators, and many other employees of the railroad will cooperate with the baggage and express men in seeing that such shipment arrives at its destination. To say that only the few employees who are actually physically in direct contact with the packages or items of the shipment handle it is to place a strained construction upon the word 'handling' so narrow in meaning that it cannot be reasonably supposed the parties to the agreement intended such construction."

In the case at bar all carriers handling the shipment participate in the cost of rendering the service and in the revenue in connection therewith. It would be unfair and contrary to the public policy enunciated by Congress and the Supreme Court to permit this plaintiff to recover $10,444.50 when by its declaration of a value of $2,000 it has enjoyed the benefit of a lower transportation charge predicated upon the low declared value. Soo's revenue from the shipment would have been proportionately greater had plaintiff declared the value of $10,444.50. As said by the Supreme Court in Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29, 57 S.Ct. 73, 74, 81 L.Ed. 20, "The underlying principle is that the carrier is entitled to base rates upon value and that its compensation should bear a reasonable relation to the risk and responsibility assumed."

It is significant that Railway Express will pay the judgment, no matter what it may be, in accordance with the provisions of the express operations agreement.[3] There could be no more cogent reason for including in the uniform express receipt a provision that its terms inure to Soo. In the capacity of a carrier handling a shipment the railroad is entitled to the benefit of the provisions of said receipt, including the provision limiting the liability for damages for loss of the shipment.

 The provisions in section 1 of article II of the express operations agreement between Soo and Railway Express are not inconsistent with our holding that Soo was not required to file tariffs covering the transaction in question. Said section 1 provides, in part:

"All classifications, tariffs and other rules or regulations relating to the transportation of express matter required or permitted to be filed with the Interstate Commerce Commission or other public body *may* be filed by the Express Company on its own behalf and/or on behalf of the Rail Company and other carriers with which the Express Company may enter into agreements similar hereto, and to this end the Rail Company hereby constitutes the Express Company its true and lawful agent for the purpose of filing with the Interstate Commerce Commission and any other proper public body, domestic or foreign, all necessary classifications, tariffs and other rules or regulations relating to the transportation of express matter." (Italics supplied.)

3. Article VII of said agreement provides, in part:
"As between the Rail Company and the Express Company, the Express Company shall be liable:
"(a) For any and all claims on account of loss of * * * the property of others in its charge carried under the provisions of this agreement;
  \*      \*      \*      \*      \*

The filing of such tariffs was by this provision left optional with Railway Express.

 We find it unnecessary to decide whether plaintiffs are correct in their contention that Railway Express is an independent contractor and not the agent of Soo. Even if plaintiffs are right in so urging, that fact would not conflict with our reasoning and the result which we reach.

For the reasons hereinbefore set forth, we affirm the judgment below.

"The Express Company shall indemnify and save harmless the Rail Company * * * against all claims, demands, suits, and actions whatsoever, including expense of litigation, that may be begun against any of the same on account of any claim arising or growing out of liability assumed by the Express Company under this Article whether in law or in equity or before any compensation board, tribunal, or court whatsoever."