## UNITED STATES v. RAILWAY EXP. AGENCY, Inc.

Civ. No. 1155.

United States District Court,
D. Delaware.

Dec. 7, 1951.

William, Marvel, U. S. Atty., of Wilmington, Del., H. G. Morison, Asst. Atty. Gen., James E. Kilday, Special Asst. to the Atty. Gen., Charles L. Beckler, Trial Attorney, Bethesda, Md., and Gareth M. Neville, Special Attorney, of Washington, D. C., for plaintiff.

Richard F. Corroon (Berl, Potter & Anderson) of Wilmington, Del., Francis M. Shea and Warner W. Gardner (Shea, Greenman, Gardner & McConnaughey) of Washington, D. C., J. H. Mooers and J. E. Mann of New York City, Albert Ward of Philadelphia, Pa., and Sidney S. Alderman of Washington, D. C., for defendant.

RODNEY, District Judge.

This case involves a motion of the defendant, Railway Express Agency, Inc., to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C. and a motion of the plaintiff, the United States of America, for judgment on the pleadings under Rule 12(c). A decision of this court on April 3, 1950,[1] rejected the defendant's contention that the court was without jurisdiction to hear this case, but then stayed the proceedings until certain further action was taken by the Interstate Commerce Commission. These proceedings by the Commission having been concluded, both the plaintiff and the defendant renew the above motions.

The nature of the present suit and the basic facts upon which it is founded were set forth in full by the opinion of April 3, 1950. However, to insure a better understanding of the issues raised by these motions, a brief summary of the facts may be desirable.

This is a civil action brought by the United States charging that the defendant, by reason of the terms of uniform operating agreements which it has entered into with almost all of the railroads of the United States, has entered into contracts in restraint of trade among the several states in the express transportation business by railroad and has monopolized trade in the express transportation business by railroad among the several states. The Government complains more particularly of those portions of the operating agreements which constitute the defendant the exclusive agent of the several participating railroads in the express business and prohibit them from engaging in the business.

Prior to 1928 most of the express business was carried on by American Railway Express Company, the existence of which had been authorized by Congress in the Transportation Act of 1920, subject to the approval of the Interstate Commerce Commission. The Southeastern Express Company was formed in 1921, and from that time until 1938 it served the southeastern portion of the United States, competing to some extent in that area with the American Railway Express Company and later with Railway Express Agency, Inc.

In 1928 the principal railroads proposed to form a corporation which would take over the entire business of American Railway Express Company. As a result, Railway Express Agency, Inc., was formed, the stock of the new corporation being owned by the principal railroads. Its proposed financial structure and plan of distributing income was submitted to the Interstate Commerce Commission for its approval. On February 11, 1929, the Commission made an order approving acquisition of control of the Express Agency by the participating

1. 89 F.Supp. 981.

railroads, and authorizing and approving Article V of the proposed uniform operating agreement "solely insofar as it provides for a division of earnings for which the Commission's approval and authorization is required under paragraph (1) of section 5 of the Interstate Commerce Act." The order further provided that "nothing herein shall be construed as approving any particular provisions of Article V or of any other part of said proposed operating agreement."[2] The proposed uniform operating agreement had in it provisions for appointing the Express Agency the exclusive agent of the contracting railroads, and in its opinion with respect to the order of February 11, 1929, the Commission specifically noted that the proposed uniform operating agreement included such an exclusive agency agreement.

Thereafter Railway Express Agency entered into the uniform operating agreement with virtually all of the railroads, which agreement by its terms continues in effect until 1954. In 1938 Southeastern Express Agency was absorbed by Railway Express Agency. Again the Interstate Commerce Commission approved the pooling provisions of the uniform operating agreement which it was proposed Railway Express Agency would enter into with the railroads formerly having operating contracts with Southeastern Express Agency, without, however, specifically approving or disapproving the exclusive agency provisions of the proposed operating agreement.

This court, at its former hearing, while convinced of its jurisdiction to hear the proceedings, felt that the approval of the pooling agreement of the defendant by the Interstate Commerce Commission did not specifically include the approval of the exclusive agency provisions of the uniform operating agreements. This court was of the opinion that the existence or non-existence of this exclusive agency agreement as an essential ingredient or necessary adjunct to the pooling arrangement and division of earnings theretofore approved by the Commission would constitute one of the main issues to be determined. A petition of the defendant to the Interstate Commerce Commission seeking clarification of the Commission's former ruling to that effect was then pending. This court accordingly, on April 3, 1950, stayed proceedings in order that the Commission might act on the petition then pending before it. Subsequently the Interstate Commerce Commission, in an elaborate opinion on February 12, 1951, answered the petition of the defendant. The Commission did not deem it necessary to consider whether the approval of the exclusive agency agreement was implicit in its former holding in view of its power to make supplemental orders and held that exclusive agency agreement was not a novel provision and "is at the heart of the present plan for conducting the express business." The Commission expressly held:

"1. That the present operations of the Railway Express Agency, Inc., result from contracts entered into by common carriers by railroad subject to Part I of the Interstate Commerce Act for the pooling of traffic and service, of which the exclusive-agency provisions are a necessary and essential ingredient; and

"2. That such pooling is in the interest of better service to the public and of economy in operation, and will not unduly restrain competition."

Except for so-called "technical" objections by the plaintiff to be hereinafter briefly considered, this court feels impelled to consider the two opinions of the Interstate Commerce Commission, viz., those of February 11, 1929 and of February 12, 1951, in connection with each other. In the first opinion of February 11, 1929, the Commission expressly approved the pooling arrangement and division of profits under which the defendant operates. The second opinion of the Commission of February 12, 1951, expressly states that the exclusive agency agreements are necessary and essential ingredients to the pooling arrangement. The order upon the last opinion of the Commission expressly approved and authorized the operating agreement mentioned in the former holding and which includes the exclusive agency provisions.

2. 150 I.C.C. 423.

From these findings of the Interstate Commerce Commission or the orders entered thereon no appeal has been taken, no review attempted and no injunction sought to test the correctness of their findings or conclusions. Indeed, appellate or review proceedings from orders of the Interstate Commerce Commission have received scant statutory attention except when accompanied with an application for an interlocutory or permanent injunction which seems to form the jurisdictional basis of a three-judge court under the provisions of 28 U.S.C. § 2325.

■ The orders, then, of the Interstate Commerce Commission stand unattacked and unimpeached in any direct proceeding. As such the orders are binding upon the defendant under the express provisions of the Statute, 49 U.S.C.A. § 16(7). That the orders are permissive rather than mandatory would seem immaterial. ·

■ It has been held that the orders of the Interstate Commerce Commission may not be attacked in a collateral proceeding.[3]

■ What, then, is the present situation? The Interstate Commerce Commission, pursuant to the express statutory authority of Title 49, § 5(1), and after a hearing developing the facts, approved the pooling arrangement and division of earnings under which the defendant operates. The Commission in 1951 re-examined its former order and held that the exclusive agency agreement was a necessary and essential ingredient of the pooling arrangement theretofore approved. Any examination as to any change of facts intervening between the two hearings was prevented by the Government plaintiff.[4] The findings of fact of the Commission in the absence of the evidence on which they are based are conclusive. O'Malley v. United States, D.C., 38 F.Supp. 1, and cases there cited.

The Government plaintiff in the present suit does not directly assail the order of the Interstate Commerce Commission. Indeed, in its brief the plaintiff directly states that this court is not "being asked to enjoin or set aside the Commission's order." There is thus lacking the statutory jurisdiction of a three-judge court under 28 U.S.C. § 2325. The plaintiff, however, directly asks this court to hold as invalid the actions taken by the defendant pursuant to the order of the Commission. The plaintiff expressly asks this court to enjoin the defendant from "claiming any rights" under a contract as approved by the Interstate Commerce Commission. This situation was considered in Venner v. Michigan Central R. Co., 271 U.S. 127, 130, 46 S.Ct. 444, 445, 70 L.Ed. 868, where it is said: "While the amended bill does not expressly pray that the order be annulled or set aside, it does assail the validity of the order and pray that the defendant company be enjoined from doing what the order specifically authorizes, which is equivalent to asking that the order be adjudged invalid and set aside."

■ I am of the opinion that this court, sitting as a one-judge court, has no jurisdiction or authority to grant an injunction preventing the defendant from doing that which an order of the Interstate Commerce Commission specifically authorizes when a hearing to directly enjoin the enforcement of that same order of the Commission would be required to be held by a three-judge court under 28 U.S.C. § 2325.

This is not to say that this court does not have a general jurisdiction in the case. This District Court, sitting in a single-judge capacity, has jurisdiction in matters concerning violations of the Sherman Act under which this suit is brought. It is when the jurisdiction impinges upon the statutory provisions of 28 U.S.C. § 2325 that the constitution of the court is changed and the matter can only be heard by a three-judge court.

The plaintiff places reliance upon United States v. Far East Conference, D.C., 94 F.Supp. 900. That case does not conflict with any of the conclusions herein reached. That case was heard upon a motion to dismiss.

3. Village of Mantorville v. Chicago Great Western R. Co., D.C., 8 F.Supp. 791, 795; Interstate Commerce Commission v. Consolidated Freightways, D.C., 41 F.Supp. 651, 655.

4. See opinion of Interstate Commerce Commission of February 12, 1951.

It was contended that an approval of an agreement by the Shipping Board ousted the court of jurisdiction to determine a violation of the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note. That court, as did this court in this case at a former hearing, held that the court was not thus deprived of jurisdiction. Judge Smith held that the particular subject matter approved by the Shipping Board might be within the purview of the statutory exemption but that all conduct of the defendants and their practices were not exempt from the provisions of the Sherman Act. Because of these other acts he held that the exempting provision of Sec. 15 of the Shipping Act, 46 U.S.C.A. § 814, while able to be interposed as a substantive defense to applicable transactions, could not be raised as a procedural bar to prosecute the action itself. Such was substantially the holding of this court on April 3, 1950. See also S. S. W., Inc., v. Air Transport Ass'n of America, D.C.Cir., 191 F.2d 658.

This, then, brings me to a consideration of 49 U.S.C.A. § 5(11). This section deals with the authority of the Interstate Commerce Commission and with the removal of the operation of the anti-trust laws from cases where the Commission has given express approval and interested persons have properly acted on such approval. That section, with the deletion of provisions immaterial in this case, appears in the footnote.[5]

Courts have repeatedly drawn attention to the fact that the authority of the Interstate Commerce Commission, by the Transportation Act of 1940, was made "exclusive and plenary,"[6] and in McLean Trucking Co. v. United States it was noted that the Transportation Act of 1940 was not only later in time than the anti-trust legislation, but more specific in character.

■ There remains to be considered the two subsidiary contentions of the plaintiff. The plaintiff contends that the supplemental order could not be effective because there is no shown assent by all of the carriers. It is sufficient to state that all carriers had shown assent to the pooling agreement and arrangement by being parties thereto. The Commission approved that agreement and the supplemental order merely made clear that the exclusive agency agreement, theretofore approved by all the carriers, was an integral consideration of the Commission's first approval of the pooling agreement. This supplemental order needed no separate approval of the carriers.

■ The Government also suggests what it denominates as a "technical contention." This arises from the fact that between the original approval of the operating agreement by the Interstate Commerce Commission and the date of the supplemental order the defendant pursued a course of conduct. The Government technically contends that the express approval of the exclusive agency agreement did not arise until the date of the supplemental order and that the actions taken in the interim were therefore invalid. It is only necessary to suggest that the Commission itself has said that, while the express approval of the exclusive agency agreement was by supplemental order, yet that such agreement was an essential ingredient of the pooling agreement theretofore approved.

This present matter, as stated, embraces both a motion of the plaintiff for a judgment on the pleadings and a motion by the defendant to dismiss the complaint. Both

---

5. 49 U.S.C.A. § 5(11): "The authority conferred by this section shall be exclusive and plenary, and any carrier or corporation participating in * * * any transaction approved by the Commission thereunder, shall have full power * * * to carry such transaction into effect * * *; and any carriers or other corporations, and their officers and employees and any other persons, participating in a transaction approved or authorized under the provisions of this section shall be and they are hereby relieved

from the operation of the antitrust laws and of all other restraints, limitations, and prohibitions of law, Federal, State, or municipal, insofar as may be necessary to enable them to carry into effect the transaction so approved or provided for in accordance with the terms and conditions, if any, imposed by the Commission * * *."

6. McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 379, 88 L.Ed. 544; Seaboard Air Line R. Co. v. Daniel, 333 U.S. 118, 68 S.Ct. 426, 92 L.Ed. 580.

motions involve the same considerations and the conclusion reached is applicable to both.

The plaintiff's motion for a judgment on the pleadings is denied.

■ Because the plaintiff does not suggest in the complaint any activity of the defendant which does not come within the express approval of the Interstate Commerce Commission, and because the jurisdiction of such Commission is exclusive and plenary and every action of the defendant properly taken pursuant to that order is relieved from the operation of the anti-trust legislation, so the motion of the defendant to dismiss this suit must be granted.

Appropriate orders may be submitted.