412 F.2d 1043
 REDAC PROJECT 6426, INC., individually and as a member of the firm of Redac Edgewater Limited Partnership and Redac Project 6427, Inc., individually and as a member of the firm of Redac Land Limited Partnership, Plaintiffs-Appellants,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellee.
 Nos. 557-560.
 Dockets 33192-33195.
 United States Court of Appeals Second Circuit.
 Argued May 23, 1969.
 Decided June 16, 1969.
 
 Harry Sabbath Bodin, New York City, for plaintiffs-appellants.
 Bernard J. Nussbaum, Chicago, Ill. (Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Dustin E. Neumark, Chicago, Ill., Aranow, Brodsky, Bohlinger, Einhorn & Dann, Robert J. Ward, New York City, on the brief), for defendant-appellee.
 Before LUMBARD, Chief Judge, FEINBERG, Circuit Judge, and TIMBERS, District Judge.*
 FEINBERG, Circuit Judge:
 
 
 1
 Plaintiffs Redac Project 6426, Inc. and Redac Project 6427, Inc. appeal from a final judgment of the United States District Court for the Southern District of New York, Sylvester J. Ryan, J., dismissing their suit against defendant Allstate Insurance Company and enjoining them from instituting "any other actions or proceedings related to the subject matter" of that suit. Plaintiffs also appeal from the denial by Judge Ryan of their motion under Rule 60(b), Fed.R.Civ.P., to set aside or modify the judgment. For reasons set forth below, we affirm the district court.
 
 I.
 
 2
 In the fall of 1968, this litigation began and ended in the trial court in an extraordinary flurry of intensive legal maneuvering, including a prior appeal to this court, Redac Project 6426, Inc. v. Allstate Insurance Co., 402 F.2d 789 (2d Cir.1968). The case grows out of agreements made in the spring of 1965 whereby plaintiffs and defendant Allstate formed two limited partnerships for the purpose of developing real property located in Edgewater, New Jersey, known as Hudson Harbour. Allstate provided the financing for the project and had a 95 per cent ownership interest in the limited partnerships; one of the corporate plaintiffs was the general partner in each limited partnership. The corporate plaintiffs are wholly owned by The Redac Corporation, which also owns various other subsidiaries involved in the Hudson Harbour project. James F. Trautman is the president of the parent company, the two corporate plaintiffs, and the other subsidiaries and was found to be "the controlling person" in all. Under a "buy-sell" agreement, executed in August 1967, and apparently as part of a transaction under which Allstate invested further funds, plaintiffs received an option for a designated period to purchase Allstate's interest and thereafter Allstate had a similar reciprocal option. In connection therewith, under an escrow agreement executed the following month, deeds to real property were deposited with an escrow agent.
 
 
 3
 At the time plaintiffs' option expired, and before Allstate could consummate its own option, plaintiffs began this litigation. On October 18, 1968, they brought suit in the New York Supreme Court, New York County, to prevent Allstate from acquiring record title to the property, alleging that the buy-sell and escrow agreements were the product of "duress" and that Allstate had breached its "fiduciary" duties to plaintiffs. Plaintiffs were granted an ex parte temporary restraining order by the New York courts. On October 21, Allstate removed the action to the federal district court where the restraining order was continued pending action on plaintiffs' motion for a preliminary injunction. That application was denied on November 1 by Judge Ryan; the temporary restraining order was continued only until November 6. However, the judge did enjoin Allstate from transferring title to the property thereafter without court approval. At plaintiffs' urging, he also expedited the case and fixed November 14 as the date for plenary trial on the action for a permanent injunction.
 
 
 4
 On November 6, plaintiffs applied to this court for a stay of the district court's order pending appeal of the denial of the preliminary injunction. We continued the restraint on Allstate until 24 hours after disposition of the appeal, which we heard that same afternoon. On November 7, 1968, we handed down our decision, affirming the district court's "obviously sensible handling of an alleged emergency situation." Redac Project 6426, Inc. v. Allstate Insurance Co., supra, 402 F.2d at 790. The next day, the parties again appeared before Judge Ryan. At that time, Allstate informed the district court that on November 6, about the time the appeal was being argued in this court, plaintiffs — joined by Mr. Trautman and the affiliated companies controlled by him — had sought a similar ex parte restraining order in a New Jersey state court. Although that complaint had been withdrawn by plaintiffs' New Jersey counsel when it and the New Jersey court were informed that we had the preliminary injunction appeal under consideration, Allstate sought protection against any similar future action. Judge Ryan granted defendant's request for a temporary restraining order against plaintiffs, Trautman, and the affiliated companies, enjoining them from starting other related actions or attempting to stop Allstate from acquiring title to the Hudson Harbour property; the judge also signed an order requiring plaintiffs to show cause why they should not continue to be so enjoined.
 
 
 5
 During those same November 8 proceedings, Judge Ryan inquired whether plaintiffs still desired to go to trial on November 14 rather than have the case go back to the general calendar. Plaintiffs' counsel replied that he intended to go ahead with the trial as scheduled. Further proceedings for pre-trial purposes were then set for November 12; also scheduled for that time was argument on whether the order restraining plaintiffs and Mr. Trautman from suing elsewhere should be continued. On November 12, after a hearing, Judge Ryan announced that he intended to continue that injunction "pending the trial of this action." Pre-trial conference then began and Allstate immediately announced that it had recorded the deeds to the Hudson Harbour property. Further pre-trial proceedings were held that day and the next, when plaintiffs' counsel proposed an amended complaint, praying that Allstate be compelled to reconvey the property and for further just relief, which everyone recognized could include damages. That amended complaint was never filed. Rather on November 14, when the trial was about to begin, counsel for plaintiffs asked leave to withdraw from the case, informing the court that he had been dismissed by Mr. Trautman. He further stated his understanding that Mr. Trautman wished to bring in the New Jersey firm that had brought the abortive complaint to that state's courts. Neither Mr. Trautman nor anyone from that firm was present, however, and the judge continued the matter until the following day. On November 15, after another short delay, the court was finally informed that counsel from the New Jersey firm would not be available until November 19, and an adjournment to that date was requested. Judge Ryan continued the case once more but only to November 18, ordering that the case be "marked peremptorily" against all parties.
 
 
 6
 When the case was again called, there was still no one ready to proceed to trial on behalf of plaintiffs. Instead, a request was made for a further week's adjournment so that a still different attorney, who was not in court and had only recently been contacted by Mr. Trautman, could take up the case. Judge Ryan, who had received a procession of requests for delay made on behalf of persons themselves not present, ordered the trial to proceed with plaintiffs' original counsel. He then orally granted defendant's motion for dismissal under Fed.R.Civ.P. 41(b) and directed that a form of judgment be submitted. On November 19, the attorney for whom an adjournment had been requested the prior day, though still not the attorney of record, appeared to oppose entry of judgment. He addressed the court, informing it of his advice to Mr. Trautman that there was no use in proceeding with the action and that plaintiffs should seek a voluntary dismissal of the suit. Judge Ryan thereupon entered judgment dismissing plaintiffs' complaint with prejudice; he also made permanent the injunction previously imposed upon plaintiffs, which restrained them and others from bringing other suits. On December 5, 1968, Judge Ryan adhered to his decision in denying plaintiffs' application for relief under Fed.R.Civ.P. 60(b). Plaintiffs thereafter appealed, attacking both the dismissal of their action with prejudice and the order enjoining them from filing future suits "related to" that action.
 
 II.
 
 7
 It is well settled that neither a dismissal with prejudice for failure to prosecute nor a refusal to vacate such a judgment will be reversed on appeal except for abuse of discretion. See, e.g., Link v. Wabash R. R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Schwarz v. United States, 384 F.2d 833 (2d Cir. 1967). Plaintiffs argue that Judge Ryan did abuse his discretion in dismissing with prejudice, particularly when on November 15 he continued the case only to November 18 and refused to grant plaintiffs the extra day requested. That description, however, does not represent the whole picture. According to plaintiffs themselves, it was a dispute between counsel and Mr. Trautman over the need or effectiveness of relief once Allstate had obtained title to the Hudson Harbour property that led to plaintiffs' failure to go to trial on November 14. Although they further attempt to explain why this difference was not resolved until counsel was dismissed on the eve of trial, the explanation is not convincing.
 
 
 8
 Plaintiffs had obtained on October 18 a temporary restraining order against the transfer of title from the escrow agent to Allstate. On November 1, Judge Ryan denied plaintiffs' motion for a preliminary injunction and continued the restraint against Allstate only until November 6. It was obvious then that after that date Judge Ryan was prepared to allow Allstate to obtain record title to the property, although the judge protected plaintiffs by prohibiting any further transfer of the property by Allstate without court approval. It is true that plaintiffs sought and obtained from this court a stay of transfer of title to Allstate, but we heard and decided the appeal expeditiously. Although plaintiffs claim surprise that this court "would render its decision so quickly that the deeds would be recorded two days before the date set for trial," there can be no doubt that that prospect was apparent once we did act on November 7, 1968. Indeed, on November 8 plaintiffs' counsel requested Judge Ryan to have Allstate "give assurances that it won't pick up the title." The judge denied the request, pointing out that "I am not going to enjoin them any more than I have enjoined them." At the same hearing, plaintiffs adhered to their request before Judge Ryan for an immediate trial. When Allstate announced on November 12 that it had acquired title, plaintiffs could hardly have been justified in regarding the news as unexpected. Mr. Trautman was present in court that day and pre-trial conference immediately began. Finally, the very nature of the conflict between plaintiffs and their counsel requires the conclusion that plaintiffs did not intend to proceed to trial even if given the extra day to November 19 — a conclusion confirmed by the statement of their counsel who appeared that day prior to the district court's entry of judgment.
 
 
 9
 We agree with plaintiffs that dismissal with prejudice is a most severe sanction that must be carefully weighed against the strong policy of allowing a plaintiff his day in court. Nevertheless, we cannot say that Judge Ryan's decision to dismiss plaintiffs' action with prejudice was an abuse of discretion in light of the facts described above. Plaintiffs' urgent requests were acted upon with great dispatch in the trial court and in this court; their suit, in effect, was preferred over all of the thousands of cases in the courthouse. Nevertheless, plaintiffs contend that after receiving such expedition they were entitled to a continuance or voluntary dismissal when at the last moment they decided that an immediate plenary trial was no longer in their own self-interest. Moreover, the excuse given — that the action had become moot with the transfer of title to Allstate — was not a good one. The possibilities of reconveyance and of damages remained; each had been referred to in the earlier proceedings in the district court and in the opinion of this court. The truth is that plaintiffs had been using the temporary injunctive process of the courts to achieve their own purposes, and the delay sought when trial was about to begin amounted to trifling with the district court's time. Finally, this is not a case where a blameless client is paying a harsh penalty for his lawyer's shortcomings. The decision to stall came from Mr. Trautman, who controlled plaintiffs. Neither his former nor present counsel did less than represent him effectively, and we imply no criticism of them. The sanction here was placed squarely where it belonged, and plaintiffs have not met their burden of showing a clear abuse of discretion. See Ohliger v. United States, 308 F.2d 667 (2d Cir. 1962) (per curiam). In sum, we will not interfere in a case like this one with a district judge's choice of dismissal with prejudice. Cf. West v. Gilbert, 361 F.2d 314 (2d Cir.) (per curiam), cert. denied, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966); Davis v. United Fruit Co., 402 F.2d 328 (2d Cir. 1968), cert. denied, 393 U.S. 1085, 89 S.Ct. 869, 21 L.Ed.2d 778 (1969).
 
 III.
 
 10
 We turn now to the question whether Judge Ryan committed error by permanently restraining plaintiffs, various other companies, and Mr. Trautman
 
 
 11
 from commencing any other actions or proceedings related to the subject matter of this action and from attempting to restrain or enjoin or in any way hindering defendant Allstate Insurance Company, from acquiring the property * * * commonly referred to as the Hudson Harbour Project.
 
 
 12
 Plaintiffs do not contend that the district court lacked power to enter such an order, cf. Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., 247 F.2d 940 (2d Cir. 1957); rather, they argue that doing so was an abuse of discretion and that the order was far too broad. As to the propriety of enjoining the plaintiffs in some respect, we cannot say that Judge Ryan abused his discretion. After unsuccessfully moving below to prevent Allstate from taking record title, plaintiffs attempted to achieve ex parte in the New Jersey courts precisely what they had been unable to attain from Judge Ryan, apparently informing New York counsel of their move only when they were about to leave for the state judge's chambers. Moreover, Mr. Trautman's post-judgment affidavit made clear, if it was not so already, that plaintiffs wanted the injunction lifted "to pursue the causes of action set forth in the New Jersey complaint, or any other causes of action counsel may deem sustainable." Judge Ryan found a threat of a multiplicity of suits designed to frustrate the order of the district court, and the finding was not clearly erroneous. It is true that Allstate's judgment on the merits in plaintiffs' action might make available defenses of res judicata or collateral estoppel in any future suit plaintiffs might bring against Allstate. But the judge was not required to remit Allstate to that protection alone, see Clinton v. United States, 297 F.2d 899 (9th Cir. 1961), cert. denied, 369 U.S. 856, 82 S.Ct. 944, 8 L.Ed. 2d 14 (1962); Meredith v. John Deere Plow Co., 261 F.2d 121 (8th Cir. 1958), cert. denied, 359 U.S. 909, 79 S.Ct. 586, 3 L.Ed.2d 574 (1959); Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., supra, and we will not hold that he erred in not doing so.
 
 
 13
 There are more serious questions concerning the scope and meaning of the order. Plaintiffs argue that they are now unjustifiably precluded from bringing other meritorious actions against Allstate except for an accounting under the partnership agreements, which the final judgment allowed them to bring. Plaintiffs hypothesize possible actions for damages against Allstate that might not be covered in a partnership accounting. Moreover, they point out that the injunction also runs against affiliated companies which undertook obligations relating to development of the property but which would not even be entitled to a partnership accounting because they were not partners under the partnership agreements. On the latter point, Allstate argues that these companies would be bound by Fed.R.Civ.P. 65(d) even if not specifically included in the injunctive order, because Mr. Trautman and the affiliated companies acted in concert with plaintiffs.
 
 
 14
 We understand plaintiffs' concern but do not think that the order requires the overly broad construction they envision. Its language should have no greater effect than that explicitly attributed to it by the district judge, i.e., to prevent plaintiffs "from applying for injunctive relief in any lawsuit they might file" and to insure Allstate's "peaceful possession and enjoyment of the property." We find support in this view in the formal findings of fact made by Judge Ryan in the order enjoining plaintiffs pendente lite, which focused on restraining any further attempts to obtain injunctive relief and included the finding that Allstate had ample assets to respond in damages if the injunction were improperly issued. We conclude that plaintiffs are enjoined only from attempting to obtain injunctive relief relating to Allstate's possession and title to the Hudson Harbour property. Thus, they are free to start any suit which seeks damages only. A more drastic injunction is uncommon and we would expect the district court to be more explicit if anything further was intended. Of course, plaintiffs must be well aware, as Allstate undoubtedly is, that the right to commence a suit for damages may be an empty one, at least in some instances. The judgment in this case dismissing plaintiffs' complaint on the merits will have devastating effect on any claim — even though for damages only — based upon the theories of the complaint here, e.g., that the 1967 buy-sell and escrow agreements were the product of duress or that Allstate had breached its fiduciary duty as a partner to plaintiffs. Finally, it is clear that the injunction properly extends to Mr. Trautman and the affiliated companies; conversely, and despite plaintiffs' fears to the contrary, the order also contemplates that any of the latter should be able to participate in an accounting under the partnership agreements.
 
 
 15
 The orders of the district court are affirmed.
 
 
 
 Notes:
 
 
 *
 Chief Judge of the District of Connecticut, sitting by designation