**Randolph PHILLIPS, Plaintiff,**

v.

**John E. TOBIN et al., Defendants.**

**No. 74 Civ. 5740.**

United States District Court,
S. D. New York.

Nov. 5, 1975.

Randolph Phillips, pro se.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendants Tobin, Kirby, Kirby, Jr., and Burns; Samuel E. Gates, Robert J. Geniesse, John G. Koeltl, Douglas S. Eakeley, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant Alleghany Corp.; H. Richard Schumacher, New York City, of counsel.

ROBERT J. WARD, District Judge.

Defendants, Alleghany Corporation ("Alleghany") and certain of its directors, move for judgment pursuant to Rule 12(c), Fed.R.Civ.P., dismissing the amended complaint of plaintiff Randolph Phillips ("Phillips"). For the reasons hereinafter stated, the motion is granted in part and denied in part.*

"The affairs of Alleghany Corporation . . . have given rise to a flood of litigation that must be unparalleled in American corporation law." *Willheim v. Murchison*, 342 F.2d 33, 35 (2d Cir. 1965). This action adds to that flood.

Phillips, the beneficial owner of shares of Alleghany's common stock, charges violations of the Investment Company Act (15 U.S.C. § 80a et seq.), the federal securities laws, and the common law fiduciary duties of defendant directors. The violations are alleged to have taken place in the course of Alleghany's 1968 acquisition of the Jones Motor Company, Inc. ("Jones") and in the corporation's purported delay in selling its Penn Central shares in 1969.

Rule 12(c), Fed.R.Civ.P., under which defendants move, provides in pertinent part:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.

The complaint is challenged on several grounds. Defendants claim that Alleghany is exempt from the Investment Company Act because the Interstate Commerce Commission ("the ICC") has subjected the corporation to its regulation. They assert that ICC approval of the Jones transaction has deprived the Court of subject matter jurisdiction and requires that any claims relating to that

acquisition be pursued under the mechanisms provided by the Urgent Deficiencies Act (28 U.S.C. § 2321). Lack of subject matter jurisdiction over the common law fiduciary duty claims is also argued, based on lack of complete diversity.

Additionally, defendants maintain that Phillips' allegations of violations of federal securities law fail to state a claim, that certain counts of his complaint are foreclosed by the applicable statutes of limitation, and that all requested equitable relief is barred by laches. Finally, it is argued that Phillips cannot provide the representation required by Rule 23.1, Fed.R.Civ.P., that as a layman, he may not prosecute a derivative suit *pro se,* and that his pleadings fail to satisfy the demands of the federal rules.

Plaintiff's complaint consists of seven counts. First the Court will deal with those which arise under the Interstate Commerce Act and the Investment Company Act; these go to the subject matter jurisdiction of this tribunal. Next to be discussed will be those counts which claim violations of the anti-fraud provisions of federal securities law. Finally, the last count, which involves state law claims, will be examined.

The bulk of Count I as well as part of Count VI and all of Counts II and IV raise questions regarding the authority of the ICC to regulate Alleghany's activities. Thus, crucial to a disposition of this motion is a determination of Alleghany's status as an entity subject to ICC regulation. A brief review of the corporation's past is in order.

In 1940 Alleghany registered with the Securities and Exchange Commission ("the SEC") as an investment company. Five years later, the corporation's application for ICC approval of its acquisition of certain railroad interests was granted. In its directive the ICC indicated that "unless and until otherwise ordered by this Commission Alleghany

---

* Although defendants have made two separate Rule 12(c) motions, the Court has treated them as one inasmuch as they raise the same issues.

Corporation shall be considered as a carrier subject to," applicable Interstate Commerce Act provisions. In the same year, the SEC declared that Alleghany was no longer an investment company. At this time Alleghany owned controlling stock interests in both the Chesapeake & Ohio Railway Company ("C&O") and Pittston Company, a trucking concern. In 1954, the C&O stock was sold and subsequently control of the New York Central Railroad Company ("Central") was secured. Later that year, wishing to merge two Central subsidiaries, Alleghany sought ICC approval. The application was granted by Division IV of the ICC in 1955; its decision was later affirmed by the full Commission. Division IV held that the 1945 ICC order with its "unless and until otherwise ordered" language was still in effect, unaltered by any of Alleghany's shifting stock interests.

In 1966 Alleghany relinquished control of Central, and in 1968, acquired Jones. Phillips claims that with surrender of its Central interests Alleghany ceased to be subject to ICC regulation, and reverted to the status of an investment company. He points to Alleghany's registration in 1968 with the SEC, a move which defendants assert was done with full disclaimers and designed solely to cover the possibility that proposed plans to apply to the ICC for continued regulation might fail and dire consequences result.

By an order dated January 27, 1970, the ICC approved, subject to conditions set forth in a report of the same date, Alleghany's acquisition of control of Jones. In addition, the ICC vacated its 1955 orders regulating Alleghany as a person not a carrier in control of a carrier under § 5(3) of the Interstate Commerce Act and imposed regulation upon the corporation under Part II of the Act as a motor carrier. *Alleghany Corp.– Control and Purchase–Jones Motor Co., Inc.,* 109 MC 333 (1970).

Subsequently, the SEC deregistered Alleghany under the Investment Company Act.

Section 3 of the Investment Company Act excepts from coverage "(7) Any company subject to regulation under the Interstate Commerce Act." Actions of the ICC are reviewable through the procedures provided by the Urgent Deficiencies Act.

A lawsuit may fall within the requirements of the Urgent Deficiencies Act even though there be no request by the plaintiff that a Commission order be set aside and even though no specific order be mentioned on the face of the pleadings. If it can be established extrinsically that the practical effect of success on the merits by the party making the claim would be to invalidate, countermand or contradict an ICC order, the Act applies and its requirements must be met. *Venner v. Michigan Central Railroad Co.,* 271 U.S. 127, 46 S.Ct. 444, 70 L. Ed. 868 (1926); *B.F. Goodrich Co. v. Northwest Industries, Inc.,* 424 F.2d 1349 (3rd Cir.), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); *Schwartz v. Bowman,* 244 F.Supp. 51 (S.D.N.Y.1965), aff'd per curiam, 360 F.2d 211 (2d Cir.), cert. denied, 385 U.S. 921, 87 S.Ct. 230, 17 L.Ed.2d 145 (1966); *United States v. Railway Express Agency,* 101 F.Supp. 1008 (D. Del.1951).

*REA Express Inc. v. Alabama Great Southern Railroad Co.,* 343 F.Supp. 851, 856 (S.D.N.Y.1972), *aff'd,* 412 U.S. 934, 93 S.Ct. 2774, 37 L.Ed.2d 393 (1973).

Phillips' suit, insofar as it concerns the Jones transaction, appears to fall within the purview of the Urgent Deficiencies Act. To the extent that it was approved by the ICC, the acquisition can only be challenged through the channels provided for review of ICC actions. In this regard, the reasoning of *Schwartz v. Bowman,* 244 F.Supp. 51 (S.D.N.Y. 1965), *cert. denied,* 385 U.S. 921, 87 S. Ct. 230, 17 L.Ed.2d 145 (1966), is persuasive. *Schwartz* is an earlier page in Alleghany's voluminous litigation history. At issue were substantially similar

issues albeit involving a different time period. As phrased by Judge Bryan:

> Thus, the threshold jurisdictional question presented [asks:]
>
> (1) Did the outstanding orders and decisions of the ICC determine that at all relevant times Alleghany was subject to regulation under the Interstate Commerce Act and was therefore, under the express terms of the Investment Company Act, not an investment company which was required to register with the SEC?
>
> (2) Does the private action at bar necessarily involve directly or indirectly an attack on the validity of such orders and decisions?

244 F.Supp. at 55.

*Schwartz* involved the 1954 sale of C&O and purchase of Central. Violations of the Investment Company Act were claimed and failure to register with the SEC was charged. Judge Bryan concluded:

> 1. The ICC has determined by its orders of June 5, 1945, March 2, 1955 (Division IV) and May 24, 1955, that during the period of time relevant here [January 19, 1954 to February 23, 1954] Alleghany was subject to regulation by the Commission under the Interstate Commerce Act.
>
> 2. Such orders insofar as they affect the relevant time period have never been reversed, vacated, set aside or modified in any proceedings to review under the Urgent Deficiencies Act.
>
> 3. In the action before the three judge court under that act to review the March 2 and May 24, 1955 orders of the Commission holding Alleghany subject to Interstate Commerce Act regulation, the orders were sustained.
>
> 4. If these outstanding orders of the ICC are to be given effect, Alleghany was expressly exempt from the Investment Company Act pursuant to § 3(c)(9) at the time of the Central transaction and was not re-

quired to register with the SEC or subject to regulation by that body.

244 F.Supp. at 64. Consequently, he held that the Urgent Deficiencies Act provided the only recourse for the plaintiffs because, "the action necessarily involves an attack on the validity of ICC orders and decisions, at the least indirectly, since it cannot succeed unless such determinations are overridden." 244 F.Supp. at 65. Plaintiff's declared reliance on *Fielding v. Allen*, 181 F.2d 163 (2d Cir.), *cert. denied*, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600 (1950) is misplaced. The questions determined in that suit, as stated by the Court, were "[w]hether the count alleges a cause of action founded upon a federal statute, and whether, if it does, the New York statute as to security applies." 181 F. 2d at 165. *Fielding* did not involve a possible conflict between different modes of federal review and thus is of no aid to the jurisdictional question this Court faces.

The 1970 ICC action, vacating its earlier orders as it imposed more stringent regulation, suggests as indicated by the Commission's past practice and by the *Schwartz* reasoning, that the "unless and until otherwise ordered" language of the 1955 order is to be taken literally. ICC regulation continues until the Commission orders otherwise. And ICC regulation bars the applicability of the Investment Company Act and any claims arising thereunder. Thus, Counts II, IV and those portions of Counts I and VI which challenge, directly or indirectly, orders of the Interstate Commerce Commission are dismissed.

Additionally, Count VI of the complaint in part attacks as void a 1970 order of the SEC deregistering Alleghany under the Investment Company Act. Review of such orders rests with the courts of appeal; this Court lacks subject matter jurisdiction. 15 U.S.C. § 80a–42. Accordingly, Count VI is dismissed in its entirety.

In Count III and also in Count I, the Jones transaction and certain alleged omissions in a proxy statement are challenged as violative of the anti-fraud provisions of the Securities Exchange Act of 1934. It is not contended that ICC regulation exempts Alleghany from the reach of the anti-fraud provisions of federal securities law.

■■ Phillips charges in Count III violations of Rule 10b–5 promulgated under the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.), and in Count I of the breach of § 14(a) of that Act (15 U.S.C. § 78n(a)), and SEC proxy rule 14a–9 arising from the Jones acquisition. His claim that the price paid for the motor company was exorbitant presents a fact question and adjudication of the issue at this juncture would be impermissible. Although the challenged proxy solicitation related to authorization for Alleghany to withdraw its SEC registration and to amend its charter to do business as a motor carrier rather than to approval of the Jones purchase itself, the connection between the assents sought and the acquisition is not so attenuated as to bar a 10b–5 action as a matter of law.

Since the claim arose in 1970 when ICC approval was secured, it is not time barred.

■ The plaintiff, who is neither a buyer nor a seller of the shares involved has no individual claim for relief under 10b–5. *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L. Ed. 1356 (1952). *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Consequently, his 10b–5 complaint raised in Count III may only be maintained derivatively.

Count V of Phillips' complaint asserts a violation of Rule 10b–5 regarding Alleghany's "failure" to sell its Penn Central stock in 1969. The fraud which lies at the base of this claim is somewhat difficult to trace. Plaintiff argues that the re-election of defendant directors in 1969 resulted in part from proxies obtained through a false proxy statement. This statement and the corporation's 1968 annual report "implicitly represented" that the directors were carrying out their duties free from conflicts of interest. The statement and the report, however, neglected to disclose the Penn Central holdings of certain of the directors or that half of the Alleghany directors sat on the Penn Central board or the boards of its subsidiaries. This charged "conflict of interest," Phillips contends, caused the directors to choose not to sell Alleghany's Penn Central holdings in 1969 as should have been done to prevent substantial losses which occurred when the stock was traded at a later date.

■ In light of the *Birnbaum* rule, plaintiff has no individual cause of action. His derivative claim is also subject to attack. In order to make out a 10b–5 cause of action the plaintiff must indicate that the acts complained of bear some "causal connection [to] the alleged violation of the Rule . . . ." *Mutual Shares Corp. v. Genesco, Inc.*, 384 F.2d 540, 547 (2d Cir. 1967). The connection here appears tenuous at best.

The Second Circuit has indicated that judgment on the pleadings should be granted sparingly against plaintiffs in stockholder derivative suits. This advice is predicated, however, on the reasoning that the complainant has, "little or no familiarity with the internal affairs of the corporation." *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir. 1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). This state of events hardly seems to be the case here.

Not every charge of corporate mismanagement presents a 10b–5 claim. As stated in *Haberman v. Murchison*, 331 F.Supp. 180, 188 (S.D.N.Y.1971), *aff'd*, 468 F.2d 1305 (2d Cir. 1972)

The alleged false proxy statement did not affect corporate action beyond the election of the defendants to office. Their subsequent actions in allegedly obtaining premiums for the sale of

 

offices were remote from the so called proxy fraud. We do not believe that falsity in a proxy statement for the election of directors who later commit wrongs can stand on its own as a claim for relief. If wrong was done to the corporation it is actionable regardless of the mode of election of those whe breached their fiduciary duty.

Plaintiff may seek recourse under state law for the purported breach of duty; he has failed to make out a 10b–5 claim. Count V is, therefore, dismissed.

 Count VII of the complaint charges breach of defendants' fiduciary duties under state law. Jurisdiction is purportedly based on diversity. The cases cited by Phillips to bolster his claim that the principal place of business of a corporation, for diversity purposes, is the location of its major subsidiary do not support such a contention in this instance. This Court could, however, retain jurisdiction.

Since there is subject matter jurisdiction with regard to the federal cause of action, we may, in our discretion, retain jurisdiction over pendent state causes of action derived from "a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *See also Almenares v. Wyman,* 453 F.2d 1075, 1083–86 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Drachman v. Harvey* 453 F.2d 722, 737–38 (2d Cir. 1972) (rehearing *en banc*).

*Grenader v. Spitz,* 390 F.Supp. 1112, 1116 (S.D.N.Y.1975). Since the Court has not dismissed Count III involving purported violations of federal securities law in the Jones transaction those state claims which concern that acquisition will be heard also. All other portions of Count VII are dismissed.

Defendants raise a variety of challenges to Phillips' fitness to maintain this suit *pro se* under the strictures of Rule 23.1, Fed.R.Civ.P. These argu-

ments as well as all others alleging defects in plaintiff's pleadings and substance have been examined by the Court and are rejected.

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Counts II, IV, V, and VI of Phillips' amended complaint are dismissed. Defendants' motion to dismiss the proxy fraud claim alleged in Count I, the derivative 10b–5 cause of action contained in Count III, and the Count VII state claims which arise from the Jones acquisition is denied.

It is so ordered.