626 F.2d 1101
 Simon V. HABERMAN, Plaintiff-Appellant,
v.
John E. TOBIN, Fred M. Kirby, Allan P. Kirby, Jr., each in
his own capacity as director of Alleghany Corporation, and
as attorneys for and guardians of the property of Allan P.
Kirby, Sr., John J. Burns, Jr., Defendants-Appellees,
Ralph K. Gottshall, Richard R. Hough, William G. Rabe,
Clifford H. Ramsdell, and Carlos J. Routh, as
directors of Alleghany Corporation, Defendants,
and
Alleghany Corporation, Defendant-Appellee.
 No. 1125, Dockets 79-7783, 80-7043.
 United States Court of Appeals,
Second Circuit.
 Argued May 19, 1980.
Decided July 8, 1980.
 
 1
 Thomas Bress, New York City (Greenfield, Lipsky & Bress, New York City; Eleazar Lipsky, New York City, of counsel), for plaintiff-appellant.
 
 
 2
 William E. Hegarty, New York City (Cahill, Gordon & Reindel, New York City; H. Richard Schumacher, John A. Shutkin, New York City, of counsel), for defendant-appellee Alleghany Corp.
 
 
 3
 Debevoise, Plimpton, Lyons & Gates, New York City, Robert J. Geniesse, John G. Koeltl, New York City, on brief, for defendants-appellees John E. Tobin, Fred M. Kirby, Allan P. Kirby, Jr., and John J. Burns, Jr.
 
 
 4
 Before OAKES and MESKILL, Circuit Judges, and BONSAL, District Judge.*
 
 BONSAL, District Judge:
 
 5
 On December 30, 1974, Randolph Phillips instituted this derivative action against Alleghany Corporation ("Alleghany") and certain of its directors, alleging violations of the federal securities laws, the Investment Company Act, the Interstate Commerce Act, and state laws relating to fiduciary duties of directors. The district court dismissed certain of the claims, but left outstanding two claims under the federal securities laws and one state claim alleging a breach of fiduciary duties. It further held that Phillips could represent Alleghany pro se. Phillips v. Tobin, 403 F.Supp. 89 (S.D.N.Y.1975). This holding was appealed and we held that Phillips, acting pro se, could not properly represent Alleghany in a derivative action because he was not an attorney. Phillips v. Tobin, 548 F.2d 408 (2d Cir. 1976). Thereafter, Judge Sweet granted Phillips' motion to substitute the present plaintiff, Simon V. Haberman, holder of 10 shares of Alleghany stock, as derivative plaintiff. On November 13, 1978, Alleghany moved for an order requiring Haberman to post security for costs pursuant to Rule 2 of the Civil Rules for the Southern and Eastern Districts of New York ("Local Rule 2") and Section 627 of the New York Business Corporation Law ("Section 627").
 
 
 6
 By order filed April 17, 1979 ("the April 17 order"), Judge Sweet directed Haberman to post security in the amount of $100,000 and directed Alleghany to furnish Haberman with a shareholders' list "for the sole purpose of enabling plaintiff to seek to join as additional plaintiffs other Alleghany shareholders so as to avoid the necessity of posting security pursuant to (section 627) and this Order." The order further provided that Haberman's failure within 60 days to post security in the amount of $100,000 or to move for intervention of shareholders to meet the requirements of Section 627 "shall constitute good cause for the involuntary dismissal of this action."
 
 
 7
 Within the 60 days, but more than four years after the action was instituted, Haberman acquired shares of Alleghany stock having a market value in excess of $50,000, that being the amount specified in Section 627.[1] Because of this acquisition, Haberman moved to be relieved from the April 17 order directing him to post security in the amount of $100,000. Alleghany cross-moved for an order dismissing the action for Haberman's failure to comply with the April 17 order.
 
 
 8
 By opinion dated September 27, 1979, Judge Sweet held that Haberman's purchase of Alleghany stock after the action was instituted did not meet the requirements of Section 627 and the April 17 order. Haberman v. Tobin, 480 F.Supp. 425 (S.D.N.Y.1979). Judge Sweet dismissed the state claim and required that an appropriate notice be sent to the holders of Alleghany stock. Thereafter, Haberman moved for reargument, which motion was denied.
 
 
 9
 Judge Sweet, by order filed October 19, 1979 ("the October 19 order"), directed Haberman to post a bond pursuant to Local Rule 2 in the amount of $10,000 within 15 days as a condition of his prosecuting the federal claims. The order stated that his failure to do so "shall constitute good cause for the involuntary dismissal, with prejudice, of this action." Haberman failed to post the $10,000 bond.
 
 
 10
 On October 26, 1979, Haberman applied for an order permitting him to deposit $100,000 in United States Government obligations to serve as security with regard to both the federal and state claims. By order dated November 8, 1979 ("the November 8 order"), Judge Sweet directed that"Upon deposit by plaintiff of $100,000 with the clerk of the court by November 15, 1979, plaintiff's state claims will be reinstated, and the deposit shall be deemed good and sufficient security to meet all of this court's requirements under Rule 2 and section 627 with respect to both Federal and state claims alleged in the amended complaint herein."
 
 The order further provided that
 
 11
 "plaintiff shall pay defendants the reasonable attorney's fees and court costs incurred by defendants in filing and litigating the July 2 motions to dismiss, in preparing the order entered by this court on October 19, 1979, and in responding to plaintiff's application to set aside the dismissal of the action."
 
 
 12
 Haberman failed to post the security by November 15, 1979. At a hearing held on November 16, his counsel informed Judge Sweet that Haberman would not post the security.
 
 
 13
 By order filed December 13, 1979 ("the December 13 order"), Judge Sweet dismissed the derivative action as to Haberman pursuant to Fed.R.Civ.P. 41(b) and directed that notice be sent to Alleghany stockholders advising them of the dismissal and their right to intervene in the action within 30 days to preserve their rights.[2] In addition, Judge Sweet awarded attorneys' fees and disbursements in the amount of $1900 to Alleghany and $250 to the individual defendants, on the ground that Haberman had "acted vexatiously in connection with the October 26 application."
 
 
 14
 Haberman appeals from the April 17, October 19, November 8 and December 13, 1979 orders.
 
 
 15
 Haberman contends that his acquisition of Alleghany stock having a market value in excess of $50,000 met the requirements of Section 627 with respect to the state claim.
 
 
 16
 The New York cases are in conflict as to whether the acquisition of stock after the action is commenced meets the requirements of Section 627. See Richman v. Felmus, 8 A.D.2d 985, 190 N.Y.S.2d 920 (1959); Tyler v. Gas Consumers Association, 34 Misc.2d 947, 229 N.Y.S.2d 169 (Sup.Ct.), reargument denied, 35 Misc.2d 801, 231 N.Y.S.2d 15 (1962); Purdy v. Humphrey, 187 Misc. 40, 60 N.Y.S.2d 535 (Sup.Ct.1946); Noel Associates, Inc. v. Merrill, 184 Misc. 646, 53 N.Y.S.2d 143 (Sup.Ct.1944). Tyler, the most recent case, holds that it does not. We believe that, under the facts of this case, where the stock was purchased more than four years after the action was instituted and where Haberman repeatedly disregarded Judge Sweet's orders, the requirements of Section 627 were not met.
 
 
 17
 Judge Sweet acted within his discretion in imposing a $10,000 security requirement pursuant to Local Rule 2 with respect to the federal claim.[3] During Haberman's deposition, he testified that, "I would assume if it (the costs) goes over $5000 I would lose interest. Or at least I would reassess my position." Haberman v. Tobin, 466 F.Supp. 447, 451 & n.10 (S.D.N.Y.1979). In view of Haberman's statement and the substantial costs that could be incurred by the defendants, Judge Sweet's action was appropriate. See Leighton v. One William Street Fund, Inc., 343 F.2d 565, 567 (2d Cir. 1965); Leighton v. Paramount Pictures Corp., 340 F.2d 859, 861 (2d Cir. 1965); Miller v. Town of Suffield, 249 F.2d 16 (2d Cir. 1957).
 
 
 18
 In view of the repeated disregard by Haberman of Judge Sweet's orders, Judge Sweet acted within his discretion in dismissing this derivative action insofar as Haberman as plaintiff is concerned. See Link v. Wabash R. R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Browning v. Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1083 (2d Cir. 1977); Theilmann v. Rutland Hospital, Inc., 455 F.2d 853, 855 (2d Cir. 1972); Michelsen v. Moore-McCormack Lines, Inc., 429 F.2d 394, 395 (2d Cir. 1970); Redac Project 6426, Inc. v. Allstate Insurance Company, 412 F.2d 1043, 1046 (2d Cir. 1969); First Iowa Hydro Electric Cooperative v. Iowa-Illinois Gas and Electric Co., 245 F.2d 613, 628 (8th Cir. 1957). Haberman was warned by the April 17 and October 19 orders that his failure to comply would constitute good cause for involuntary dismissal. Finally, after being granted permission to deposit $100,000 in United States government obligations to satisfy the security requirements, he failed to do so.
 
 
 19
 Haberman objects to the allowance of attorneys' fees totalling $2,150. Based on this record, we do not find these fees unreasonable. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); F. D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); Hall v. Cole, 412 U.S. 1, 4-5, 93 S.Ct. 1943, 1945-46, 36 L.Ed.2d 702 (1973).
 
 
 20
 Affirmed.
 
 OAKES, Circuit Judge (dissenting):
 
 21
 I dissent.
 
 
 22
 Judge Sweet's first order on the subject of security, pursuant to a motion by defendants, required Haberman to post $100,000 in security under both N.Y.Bus.Corp.Law § 627 and Local Civil Rule 2. Haberman responded by purchasing $50,000 in Alleghany stock, which he contended relieved him from the obligation to post security as to the state claims under the provisions of § 627. Judge Sweet disagreed that Haberman could avoid the New York security provision by a purchase of stock after the action had commenced and dismissed plaintiff's state claims. Even though the first order imposing the $100,000 security requirement was also intended to cover the federal claims under Rule 2, the judge nevertheless did not dismiss the federal claims on condition that Haberman post $10,000 bond under Rule 2 within fifteen days. Haberman then moved the district court to reinstate his state claims and retain his federal claims if he deposited as security $100,000 in "United States obligations." The district court granted this motion in an order requiring "deposit by plaintiff of $100,000" and payment by plaintiff of defendants' attorneys' fees in connection with the dismissal proceedings following Haberman's perceived lack of compliance with the first security order. When the deadline for complying with this latest order passed, Haberman withdrew his offer. The district court then dismissed all of Haberman's state and federal claims, imposed $2,150 in attorneys' fees against Haberman for having "acted vexatiously" in connection with his belated offer to post $100,000, and set a deadline for notice to and intervention by other shareholders.
 
 
 23
 I would reverse the dismissal because I believe Judge Sweet misinterpreted New York law with respect to Haberman's purchase of the $50,000 worth of Alleghany shares. Since this misinterpretation precipitated all of the subsequent moves and countermoves, both the federal and state claims should be reinstated.
 
 
 24
 The relevant portions of § 627 provide that a corporation on whose behalf a derivative action is brought is entitled to security for expenses, including attorneys' fees, "if the plaintiff or plaintiffs hold less than five percent" of any class of shares or voting trust certificates or beneficial interest, and if the plaintiffs' shares, certificates, and beneficial interest do not "have a fair value in excess of fifty thousand dollars." The statute is silent as to when these criteria must be met for a plaintiff to avoid having to post security. It is undisputed that Haberman never before suit owned five percent or more of Alleghany stock or certificates. But in my view his purchase of $50,000 worth of stock after the district court's first order requiring security was sufficient under § 627 to relieve him of the obligation of posting security for the state law claims. I find authoritative Purdy v. Humphrey, 187 Misc. 40, 60 N.Y.S.2d 535 (Sup.Ct.1946), and Richman v. Felmus (I), 8 A.D.2d 985, 190 N.Y.S.2d 920 (2d Dep't 1959), despite the fact that Tyler v. Gas Consumers Association, 34 Misc.2d 947, 229 N.Y.S.2d 169 (Sup.Ct.1962), is in the majority's words "the most recent case." In Purdy, which is closely on point, the New York Supreme Court ordered the plaintiff to post $15,000 security under the predecessor to § 627. The plaintiff thereafter purchased sufficient stock so that he held more than five percent of the shares. The court, upon motion by the defendant to dismiss, vacated its order requiring security and held, based on this purchase of stock, that plaintiff was "entitled to proceed without furnishing any security." Purdy, supra, 60 N.Y.S.2d at 537.
 
 
 25
 Purdy was cited with approval in Richman, supra the only appellate court decision cited by either side on this issue. It is true that Richman is not directly applicable to our case since it dealt with the rights of intervenors who wished to join an action and aggregate their holdings for purposes of avoiding the security requirement. The Appellate Division in Richman, did, however, cite Purdy for the analogous principle that the intervenors, who were required to have held some stock at the time the cause of action accrued, could count all of their stock acquired in the interim "for the purpose of making up the total statutory requirements to avoid providing security." Richman, supra, 8 A.D.2d at 985, 60 N.Y.S.2d at 537.
 
 
 26
 The cases relied on by the majority are not as closely on point, and none is an appellate case. In Noel Associates v. Merrill, 184 Misc. 646, 53 N.Y.S.2d 143, 153 (Sup.Ct.1944), the New York Supreme Court clearly stated: "(A)fter the action is instituted the plaintiff may not go out and buy additional stock to enable him to proceed without depositing security." This rule, however, was stated by the court as a natural consequence of the immediately preceding language which held that intervenors could not aggregate their holdings after commencement of the suit to avoid posting security. Id. As all parties and the district court here agree, this ban on aggregation after the commencement of the suit was erroneous and the law of New York now permits a plaintiff to aggregate his holdings with intervenors to meet the § 627 minima. See Sorin v. Shahmoon Industries, Inc., 30 Misc.2d 408, 220 N.Y.S.2d 760, 790 (Sup.Ct.1961). Thus, with its predicate reasoning erroneous, the Noel language that a plaintiff may not avoid posting security by increasing his holdings after institution of the action cannot be deemed reliable.
 
 
 27
 The decision in Sorin, supra, also cited by Alleghany, is totally inapplicable. There, the defendants argued that the plaintiffs should be required to post security, even though they initially complied with the $50,000 criterion, because the value of their stock had dropped below $50,000 during the course of the suit. In holding that the determination of whether security is required should be made at the beginning of the action, the court, quoting Dalva v. Bailey, 158 F.Supp. 204, 207 (S.D.N.Y.1957), stated: " 'There is no indication that the legislature intended that the right to security should depend upon the vagaries of the stockmarket.' " Sorin, supra, 220 N.Y.S.2d at 790-91. Thus, Sorin simply stands for the proposition that plaintiffs who have a sufficient initial stake in the suit need not post security just because the stock goes down.
 
 
 28
 The majority's strongest case is Tyler v. Gas Consumers Association, supra. In Tyler, the plaintiff purchased stock in excess of five percent after a security order similar to that in this case had been issued. The New York Supreme Court dismissed the case because the plaintiff had not complied with the express terms of the security order which only gave him the two options of either filing the security or finding additional shareholders with whom to aggregate claims. 229 N.Y.S.2d at 170. The court in Tyler said that it had "not overlooked" Purdy v. Humphrey, supra, but implicitly declined to follow it, citing Noel Associates, supra, instead. Id. 229 N.Y.S.2d at 171.
 
 
 29
 While these cases certainly create a cloudy picture, I believe that Haberman has the better argument since Purdy was approved by the Appellate Division in Richman and since Tyler not only seemed more preoccupied with whether the court's precise order was followed than with the requirements of § 627 but also relied almost exclusively on Noel Associates, the reasoning of which was faulty. This view is bolstered by the purpose behind § 627. As stated in Isensee v. Long Island Motion Picture Co., 184 Misc. 625, 54 N.Y.S.2d 556, 559 (Sup.Ct.1945):
 
 
 30
 A fair reading of the statute discloses an intent not to discourage derivative stockholders' actions generally but to impose conditions designed to secure more substantial representation among complaining stockholders as some measure of insurance against the abuses attending the maintenance of such actions by persons whose financial stake in the corporation is slight. The mischief against which the statute is directed, is the prosecution of so-called "strike suits" by irresponsible persons bent upon capitalization of a nuisance value.
 
 
 31
 Regardless of Haberman's motivation, his investment of $50,000 in the stock of Alleghany made him a substantial shareholder in the corporation even though the purchase was made after he was ordered to post security. Thus, he was no longer a shareholder with merely a "slight" financial stake in the corporation and should be treated as any other substantial shareholder for purposes of the security requirement. Of course, on remand, the district court could require Haberman to deposit his stock certificates with the court so that defendants have some protection. See Purdy v. Humphrey, supra, 60 N.Y.S.2d at 537.
 
 
 32
 There was nothing improper, standing alone, about the district court's imposition of security under Local Civil Rule 2 for the federal claims first as part of the $100,000 required for all claims and later as a separate $10,000. And it is true that imposition of security under Rule 2 is reversible only for an abuse of discretion. Leighton v. Paramount Pictures Corp., 340 F.2d 859, 860 (2d Cir.), cert. denied, 381 U.S. 925, 85 S.Ct. 1560, 14 L.Ed.2d 683 (1965); Farmer v. Arabian American Oil Co., 285 F.2d 720, 722 (2d Cir. 1960). See Hawes v. Club Ecuestre El Comandante, 535 F.2d 140, 143-44 (1st Cir. 1976). Unlike Farmer, supra, where this court held that there was an abuse of discretion, plaintiff here was clearly able to post the amount of the Rule 2 security, he had not come close to establishing a prima facie case, and the motion for security was filed within two months after Haberman was substituted as plaintiff. Moreover, there was nothing improper, in and of itself, about the district court's order imposing attorneys' fees for "vexatious" conduct regarding Haberman's refusal to post security even after he belatedly agreed to do so. See Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). There is no support for Haberman's view that the district court's order of November 8, 1978, required him to deposit cash rather than United States obligations, as he proposed, and no indication that Haberman ever sought a clarification of the order.
 
 
 33
 Nevertheless, in my view the federal claims as well as the state claims should be remanded to the district court since the erroneous ruling on § 627 likely had a major impact on the subsequent proceedings. If the district court had correctly held that Haberman's $50,000 stock purchase relieved him from posting security under § 627, then Haberman might well have complied with the Rule 2 order to post $10,000 to cover the federal claims.
 
 
 34
 I would thus reverse.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Section 627 provides:
 "Security for expenses in shareholders' derivative action brought in the right of the corporation to procure a judgment in its favor.
 In any action specified in section 626 (Shareholders' derivative action brought in the right of the corporation to procure a judgment in its favor), unless the plaintiff or plaintiffs hold five percent or more of any class of the outstanding shares or hold voting trust certificates or a beneficial interest in shares representing five percent or more of any class of such shares, or the shares, voting trust certificates and beneficial interest of such plaintiff or plaintiffs have a fair value in excess of fifty thousand dollars, the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorney's fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which the corporation may become liable under this chapter, under any contract or otherwise under law, to which the corporation shall have recourse in such amount as the court having jurisdiction of such action shall determine upon the termination of such action. The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or excessive."
 
 
 [2]
 The December 13 order directed that the notices to stockholders be mailed within 20 days after the final resolution of any appeal taken from the order
 
 
 [3]
 Local Rule 2 provides:
 "Security for Costs
 "The court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate. For failure to comply with the order the court may make such orders in regard to non-compliance as are just, and among others the following: an order striking out pleadings or staying further proceedings until the bond is filed or dismissing the action or rendering a judgment by default against the non-complying party."